# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | |
|---|---|
| **JASON JAMES SONNIER** | **\*CIVIL ACTION NO. 15-0113** |
| **VERSUS** | **\*MAGISTRATE JUDGE WHITEHURST** |
| **COMMISSIONER OF SOCIAL SECURITY** | **\*BY CONSENT OF THE PARTIES** |

## REASONS FOR JUDGMENT

The undersigned was referred this social security appeal by consent of the parties. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**, and this action is **DISMISSED WITH PREJUDICE**.

## I. Background

Jason James Sonnier ("Sonnier"), born in 1984, filed an application for supplemental security income ("SSI") on January 18, 2012, alleging disability as of December 1, 2008, due to paranoid schizophrenia, major depression, Type 1 diabetes, and high blood pressure.

At the administrative hearing, Sonnier testified that he had completed the ninth grade, and knew how to read and perform basic math.  (Tr. 28).  He had a very limited work history.  (Tr. 28-29).  He did not drive and had never obtained a driver's license. (Tr. 28).

In 1996, Sonnier was diagnosed with diabetes.  (Tr. 31).  He testified that his blood sugar had always been out of control, but he could not afford insulin.  (Tr. 29, 32).  He

was incarcerated for "slinging" crack, and released from prison in 2011.  (Tr. 32, 40, 233).

Sonnier stated that he had been compliant with his medications since getting out of the hospital in October, 2011.  (Tr. 33, 35).  He reported side effects of dry mouth, fatigue, and blurred vision.  (Tr. 35).

As to physical restrictions, Sonnier testified that he could sit for about 30 minutes before needing to stand, and stand for 10 minutes before needing to sit.  (Tr. 38).  He could walk a few feet to the mailbox.  He could not lift over 10 pounds.

Sonnier could dress and bathe himself.  He did not help with any household chores.  (Tr. 39).

The medical records reflect that Sonnier was hospitalized at Bogalusa Medical Center from January 9 through January 12, 2009, with suicidal ideations after intentionally stopping his insulin.  (Tr. 202).  He improved on medications.  (Tr. 204). His discharge diagnoses were depression, not otherwise specified, and malingering.

On October 11, 2011, Sonnier presented at University Medical Center ("UMC"), a charity facility, complaining of nausea, headaches and stomach pain.  (Tr. 227).  He had stopped taking his diabetes medication after his release from jail.  (Tr. 233).  During admission, he was suicidal and hypoglygcemic due to uncontrolled blood sugars.  (Tr. 231).  He was discharged on strict insulin control.

Subsequently, Sonnier was treated at Tyler Mental Health Center ("TMHC") on

October 27, 2011.  His diagnosis was paranoid schizophrenia and major depressive disorder.  (Tr. 279).  Individual therapy and medication management were recommended. (Tr. 273).

Progress notes from TMHC dated February 23, 2012, indicated that Sonnier's diabetes was controlled.  (Tr. 268).  He still heard voices, but not as often.  On May 3, 2012, he was feeling much better.  (Tr. 397).  He had intermittent thoughts that people, especially in crowds, were hostile towards him, but denied hallucinations.

Sonnier underwent a consultative physical examination with Dr. Scott C. Chapman on March 12, 2012.  (Tr. 281-84).  On examination, his mental status was normal.  (Tr. 283-84).  Insight and judgment were good, and memory, concentration and comprehension were intact.  (Tr. 283).  His diagnoses were paranoid schizophrenia, major depression, and Type I diabetes mellitus.

Dr. Chapman noted that Sonnier had been hospitalized multiple times for failing to follow his diabetes therapy.  (Tr. 281, 284).  He recommended that claimant get on a patient assistance program so that he could afford his medications.  (Tr. 284).  He noted that Sonnier would have significant complications from diabetes if his control did not improve.

On March 27, 2012, Dr. Johnny B. Craig performed a physical Residual Functional Capacity ("RFC") assessment for Disability Determination Services ("DDS").  (Tr. 61). He found that while Sonnier's diabetes had led to some medical complications, it had not

severely damaged any major organs.  (Tr. 66-67).  Dr. Craig concluded that none of his

conditions were disabling.  (Tr. 67).

Eric Cerwonka, Psy.D., performed a consultative psychological examination on

March 31, 2012.  (Tr. 291-94).  During the interview, Sonnier's mood was euthymic and

his thinking was organized and goal-directed.  (Tr. 293).  Dr. Cerwonka observed that

while Sonnier claimed that his recall was severely impaired, his level of impairment was

inconsistent with his functional presentation, most likely representing exaggeration or

outright malingering.  (Tr. 293).

Dr. Cerwonka's diagnosis was bipolar disorder with psychotic features under good

control.  He found that Sonnier had apparently achieved a good response from his current

medication regimen.  He did not expect that Sonnier's mental disorder would prevent him

from working.  (Tr. 293-94).

Dr. Cerwonka found that Sonnier was able to understand, retain and follow

instructions, and was able to sustain concentration and attention to perform simple tasks.

(Tr. 294).  While Sonnier reported occasional hallucinations and delusions, his insight

and reality testing appeared intact.  Dr. Cerwonka concluded that Sonnier did not have

any psychiatric, cognitive or behavioral problems which would prevent him from

engaging in some type of regular, full-time work.

William L. Berzman, Ph.D, completed a psychiatric review technique ("PRT") for

DDS on April 24, 2012.  (Tr. 56-62).  He found that Sonnier had mild restriction of

activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation.  (Tr. 62).

On August 27, 2012, Sonnier was admitted to UMC for uncontrolled schizophrenia, acute psychosis and delusional behavior.  (Tr. 300).  He had a history of questionable compliance with diabetic and psychiatric medications.  He was placed on an insulin drip, psychiatric medications and restraints.  His condition improved on medications.  The diagnoses were diabetic ketoacidosis (DKA) and schizophrenia.

Psychiatric evaluation at Abrom Kaplan Memorial Hospital on October 3, 2012, revealed a history of schizophrenia.  (Tr. 369).  When off of his medications, Sonnier heard voices, became quite paranoid, and got special messages from the television set. He had a history of psychiatric illness since his teenage years, and of using marijuana and ecstasy.  His drug screen was positive for cannibus.  The diagnoses were schizophrenia, paranoid type; uncontrolled diabetes and marijuana abuse.  (Tr. 370, 376).  He was referred back to TMHC.  (Tr. 374).

Records from TMHC dated December 27, 2012, indicate that Sonnier was hospitalized for non-compliance with medication.  (Tr. 393).  His diagnoses were paranoid schizophrenia and major depression.  (Tr. 390).  His Global Assessment of Functioning ("GAF") score was 50.

## II. Law and Opinion

On appeal, Sonnier argues that: (1) the ALJ's finding that Type I diabetes mellitus was not a severe impairment at step two of the sequential evaluation process is contrary to law, is not supported by substantial evidence, and resulted in the ALJ failing to consider the combined effects of his physical and mental impairments in assessing his residual functional capacity, and (2) the ALJ's RFC assessment fails to consider the side effects of his medication.

## A. Effects of Claimant's Type I Diabetes

As to the first argument, Sonnier asserts that the ALJ's finding that his Type I diabetes mellitus was not a severe impairment at step two of the sequential evaluation process is contrary to law, citing *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000), and *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

In *Loza*, the Fifth Circuit reiterated the *Stone* standard as follows: "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id*. at 391 (*citing Stone*, 752 F.2d at 1101).

Here, the ALJ found that Sonnier's affective disorders were severe impairments, but his diabetes was not. (Tr. 13). She cited the fact that claimant's diabetes was well-controlled on medication, which is supported by the evidence. (Tr. 204, 268, 281, 300).

If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Additionally, the ALJ observed that Sonnier had poor compliance with his medications. (Tr. 18). The medical records are replete with evidence of his non-compliance. (Tr. 202, 233, 281, 284, 300, 322, 369, 393). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685 n. 4 (5th Cir. 1990).

Regarding Sonnier's assertion that he could not afford his medications, the ALJ noted that the claimant had not attempted to obtain medication or medical supplies through any state programs or the state charity hospital system which would help with the costs at little or no charge. (Tr. 13). In *Lovelace*, the Fifth Circuit held that although a medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling, a condition disabling in fact becomes disabling in law if the claimant is unable to obtain the prescribed treatment or medication. 813 F.2d at 59.

Here, however, Sonnier was treated at UMC, a state-operated charity facility, on several occasions. (Tr. 217-63, 300-66). Additionally, Dr. Chapman recommended that he get on a patient assistance program so that he could afford his medications. (Tr. 284). Because he was able to obtain treatment, his condition was not disabling in law.

7

Additionally, no physician on record has ever pronounced claimant disabled, regardless of medication.  The *Lovelace* rule does not encompass claims of persons who can prove no disability but only seek benefits as a means of affording care that might conceivably prevent a disability.  *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (citing *Burnside on Behalf of Burnside v. Bowen*, 845 F.2d 587, 592 (5th Cir. 1988)).  Thus, this assertion lacks merit.

Sonnier also complains that the ALJ gave great weight to the opinion of the state agency medical consultant, Dr. Craig, to find his Type 1 diabetes to be non-severe.  (Tr. 18, 66-67).  The Social Security Regulations provide that state agency medical consultants are considered as experts in Social Security evaluation and their findings must be treated as expert opinion evidence:

> State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges *must* consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled (see § 404.1512(b)(8)).

(emphasis added).  20 C.F.R. § 404.1527(e)(2)(i); 20 C.F.R. 416.927(e)(2)(i); *see also* SSR 96-6p (July 2, 1996) ("[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion

evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.").  Thus, the ALJ properly considered Dr. Craig's opinion.

Additionally, plaintiff complains that Dr. Craig did not have the benefit of medical evidence that post-dated his opinion, including the August and October, 2012 hospitalizations.  [rec. doc. 10, p. 9].  Dr. Craig, however, did have evidence of Sonnier's prior hospitalizations due to diabetic ketoacidosis because of his non-compliance with medications.  (Tr. 60, 219, 225).[1]  Thus, this evidence would not have altered the result.[2]

Further, Sonnier argues that he was prejudiced by the ALJ's failure to consider the effects of his Type I diabetes at step two and throughout the sequential evaluation process, including in the assessment of his RFC. However, when, as here, the ALJ's analysis proceeds beyond step two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required.  *Burgette v. Colvin*, 2013 WL 3776291, at *3 (W.D. La. July 15, 2013) (*citing Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, 526 n. 1 (5th Cir. 1987) (rejecting claimant's "disingenuous" argument that the district court applied the incorrect severity standard where ALJ proceeded to steps four and five,

---

[1] To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result.  *Jones v. Astrue*, 691 F.3d 730, 735 n. 8 (5th Cir. 2012).

[2] Notably, the clinical report from University Medical Center regarding Sonnier's August 2012 hospitalization cites a history of questionable compliance with diabetic medication.  (Tr. 300).

and claimant's request for benefits was not prematurely denied based on an improper determination of non-severity)); *see also Locure v. Colvin*, 2015 WL 1505903, at *5 (E.D. La. Apr. 1, 2015) ("[w]hen the ALJ proceeds beyond step two to find at a subsequent step that a claimant is not disabled, plaintiff's argument that the ALJ failed at step two to find that a particular impairment is severe is inapposite because the ALJ did not [deny] plaintiff's benefits based on a finding that [his] impairments are not severe.") (*citing Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012) ("any error by the ALJ in not following the procedures set out in *Stone* [at step two] is harmless" when the ALJ finds at step five that plaintiff is not disabled by his severe impairments)).  Thus, this argument lacks merit.

## B. Side Effects from Claimant's Medications

Sonnier argues that the ALJ failed to address the side effects from his medications, specifically fatigue and difficulty focusing, in evaluating his RFC.  Under the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (*citing* 20 C.F.R. § 404.1529(c)(3)(iv)).

At the hearing, Sonnier testified that his medications caused dry mouth, fatigue and difficulty focusing.  (Tr. 35-36).  He notes that Dr. Cerwonka observed that his "[p]sychomotor activity was mildly slowed and he appeared to be very sleepy, *perhaps*

10

from his medication." (emphasis added).  (Tr. 292).  However, Sonnier did not complain

of these side effects to any of his physicians.[3]  *See Salazar v. Chater*, 1995 WL 783347,

*5 (5th Cir. 1995) ("It is logical to assume that if the claimant were suffering significantly

from any side affects [sic], the claimant would have complained to his treating physician,

yet he has not done so.");  *Wells v. Astrue*, 2009 WL 2447819, *4 n. 22 (M.D. La. Aug.

10, 2009).

Additionally, Sonnier argues that he was prejudiced by this error because the VE

testified that the inability to maintain attention for two-hour blocks of time, 25% of the

workweek, would preclude his ability to maintain employment.[4]  (Tr. 51).  However, it is

well established that the ALJ is not bound by VE testimony which is based on evidentiary

assumptions ultimately rejected by the ALJ.  *See Owens v. Heckler*, 770 F.2d 1276, 1282

(5th Cir.1985);  *Bayer v. Colvin*, 557 F. App'x. 280, 287 (5th Cir. Feb. 12, 2014).  Here,

claimant's attorney had the opportunity to incorporate all of the limitations asserted by the

claimant.  As the hypothetical to the vocational expert reasonably incorporated all

disabilities of the claimant recognized by the ALJ, and the claimant or her representative

had the opportunity to correct any deficiencies, the ALJ's findings are entitled to

deference.  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001);  *Bowling v. Shalala*, 36 F.3d

---

[3]Sonnier did complain of dry mouth from his medications, but not fatigue or problems focusing.  (Tr. 268).

[4]The pertinent part of the hypothetical is as follows: "[D]ue to blood sugar fluctuations, mental impairments or side effects of medication, the individual would be unable to maintain concentration, persistence and pace for two hour blocks of time 25 percent of each workday, so about two hours a day, they wouldn't really be able to focus to the degree they needed to."  (Tr. 51).

431, 436 (5th Cir. 1994).

.       Based on the foregoing, the Commissioner's decision is **AFFIRMED** and this

action is **DISMISSED** with prejudice.

        **THUS DONE AND SIGNED** this 1st day of May, 2016, at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

12